**Allan CICCONE and Patricia Ciccone Plaintiffs**

v.

**USAIRWAYS, INC., Defendant**

**Civil Action No. 99–10015–REK.**

United States District Court, D. Massachusetts.

May 25, 2001.

James R. Burke, Newton, MA, for plaintiffs.

Peter J. Black, Meehan, Boyle, Black & Fitzgerald, Boston, MA, Bradley M. Henry, Meehan, Boyle, Black & Fitzgerald, PC, Boston, MA, for defendant.

Opinion

KEETON, District Judge.

## I. Pending Matters

Pending for decision are the following matters:

(1) Defendant USAirways, Inc.'s Motion for Summary Judgment, L.R. 7.1 Certificate and Request for Hearing (Docket No. 14, filed February 23, 2001) with Memorandum in Support of the Defendant's Motion for Summary Judgment and Defendant's Concise Statement of Undisputed Material Facts (Docket No. 15, filed February 23, 2001), and Exhibits A–I, attached.

(2) Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary

Judgment (Docket No. 18, filed March 14, 2001) with Plaintiffs' Statement of Undisputed Facts and Exhibits B–D, attached.

(3) USAirways' Memorandum in Reply to Plaintiff's Opposition to its Motion for Summary Judgment and USAirways' Withdrawal of its Request for Hearing (Docket No. 19, filed April 2, 2001).

## II. Factual Background

Defendant, in its statement of undisputed facts filed under Local Rule 56.1, states that the following facts are not in dispute:

1. On March 20, 1997, USAir, Inc. (now, U.S. Airways, Inc.) was one of several commercial airlines leasing space in the South Terminal ("Terminal B") of Logan International Airport in Boston, Massachusetts. Like the traveling public, airport vendors, contractors and other airlines, USAirways enjoyed non-exclusive access to public areas of the terminal subject to the exclusive control and management of the Massachusetts Port Authority and its terminal operator, South Terminal Corporation. Such areas included the security screening checkpoints at Gates 1–3, Gates 14–16 and the so-called Main Concourse of Terminal B where plaintiff claims his injury occurred.

2. Commercial air carriers are required by Federal Aviation Regulations to arrange for the pre-departure security screening of passengers and their baggage. In 1997, International Total Services, Inc. ("ITS") was providing such services as an independent contractor to various airlines, including USAirways, at Logan Airport. Plaintiff was then employed by ITS as a supervisor and was responsible for overseeing ITS screening personnel and warming up screening equipment at various airline gate areas each morning. One such gate area was Terminal B's Main Concourse from which some of USAirways' flights departed.

3. On March 20, 1997, plaintiff first made sure that one of the ITS operations in Terminal C was open, and then he opened the ITS operation at Terminal B's Main Concourse by warming up and testing the equipment. ITS maintained small administrative offices or cubicles near certain security checkpoints from which its terminal managers or assistants could store and complete paperwork. ITS equipped its cubicle at the Main Concourse with two desks, two office chairs and a filing cabinet.

4. After starting and testing the screening equipment, plaintiff went over to one of the office chairs against the ITS cubicle and sat down. Plaintiff alleges that, as he sat down and moved the chair a little, it started to "dump" him forward and when he "pivoted" out of it he felt a "sharp pain in his [left] knee which lasted a minute or so and went away." He got up and continued work, but filled out an ITS injury report and told a fellow ITS supervisor. He completed the work day with no further problem except that his knee was "a little sore" and so he walked more slowly. There were no witnesses to the incident itself.

5. In an ITS report by managers Debra Belim and Chris Pepin, the chair in "the manager's office in Terminal B (I.T.S.)" was intended for use by terminal managers whom, they report, were aware that the chair was broken. However, plaintiff testified that he had not been aware of anything wrong with the chair prior to sitting down and, even after he fell, he said that "if you looked at the chair, you would think nothing was wrong with [it]." While plaintiff alleged in his Complaint that the chair was "owned and controlled by the defendant" or had been "provided" by the

defendant to ITS' security personnel, at his deposition plaintiff admitted that he had only assumed that the chair had been provided by U.S. Airways and that he did not actually know from where it had come.

6. In fact, under its contract, ITS was responsible for arranging for its own office space within the airport grounds as well as for furnishing personnel uniforms and "other necessary equipment." Notwithstanding the allegation in the plaintiff's complaint, USAirways did not own or control the chair on which plaintiff claims he was injured nor had the airline provided the subject chair to ITS.

7. Moreover, while neither the ITS supervisor nor the ITS terminal manager identified by the plaintiff were certain of the chair's origins, both stated that "others at [ITS] were aware that the chair had been broken for some time." Nevertheless, neither of these ITS employees knew of anyone "at U.S. Airways who knew that the chair was broken prior to [plaintiff's] alleged fall." Although plaintiff may have reasonably believed that a particular USAirways manager stationed in Boston at that time had knowledge about the incident or the chair involved, after a considerable search, that individual was recently located and denies any such relevant knowledge.

8. Plaintiff, in part, based his assumption that USAirways owned or provided the office chairs on the circumstance that persons in Terminal B would sometimes use the chairs to rest after the long walk down Terminal B's Main Concourse. However, this "walkway" was a common, public hallway that, although within a "secure" part of the airport, was neither owned by, nor subject to the exclusive use of, USAirways. Plaintiff suggests another reason he thought USAirways provided the chair was because, for some period of time, ITS had taken over a USAirways gate agent podium for use near a USAirways wall telephone; however, unlike the ITS office furniture, it is not disputed that USAirways owned the gate agent podium and that, at some point, it took the podium back for reasons that are not actually known to the plaintiff. Otherwise, plaintiff has no factual support for the mere allegation that USAirways owned, controlled, or provided the subject office chair to ITS.

9. According to the plaintiff, the reason ITS office chairs were often outside the ITS cubicle in the first place was because, some nights, the cleaning company under contract with the South Terminal Corporation (the terminal operator) would vacuum under ITS' desks and leave the chairs next to the cubicle and other nights, ITS screeners who had been stranded overnight at the airport would pull the chairs out in order to sleep on the desks. This was also the apparent reason that even USAirways personnel would sometime sit in the chairs; ITS allowed its chairs to remain available for use outside the cubicle to where they belonged.

Memorandum in Support of the Defendant's Motion for Summary Judgment and Defendant's Concise Statement of Undisputed Material Facts, Docket No. 15, filed February 23, 2001, at 2–5 (internal citations to supporting documents omitted).

Plaintiffs, in their Memorandum in Opposition to Defendants' Motion for Summary Judgment, Docket No. 18, filed March 14, 2001, assert that summary judgment is inappropriate, as "[t]here are essential and genuine issues of facts, which are in dispute." Docket No. 18 at 1. Plaintiffs attach to their Memorandum in Oppo-

sition a Statement of Undisputed Facts, which reads as follows:

1.  US Airways, along with U.S. Airways Express, occupied Terminal B.

2.  The secured area where the Plaintiff was injured, there were approximately twelve (12) chairs that were made available for ticketed U.S. Air passengers.

3.  The damaged chair was stored in a secured room in Terminal B, which was used by U.S. Air for their employees to eat and sleep.

4.  The cubicle used by International Total Services, the Plaintiff's employer, could accommodate two (2) desks; two (2) chairs and one (1) file cabinet. The cubicle itself was approximately 6' X 6' feet, with an opening to enter and exit.

5.  Under the terms of the agreement between International Total Services and U.S. Air, International Total Services was *only required* to provide wheelchairs and no other type of chairs.

6.  The baggage tape, used on the sign "Do Not Sit," was tape used by U.S. Airways.

7.  Customers of U.S. Air utilized the chairs more than anyone else.

Plaintiffs' Statement of Undisputed Facts, attached to Docket No. 18, at 1–2 (italics in original) (internal citations to attachments omitted).

### III.   The Pending Motions

### A.   Summary Judgment Standard

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. *See* Fed. R.Civ.P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record show-

ing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991) (emphasis in original). "To satisfy the criterion of trialworthiness, and thereby forestall summary judgment, an issue must be 'genuine,' that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995) (internal citations omitted). Furthermore, a fact must also be material, meaning that it "has the capacity to sway the outcome of the litigation under the applicable law." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

### B.   Defendant's Argument

Defendant makes the following argument in support of its motion for summary judgment:

In order to sustain a case through trial against U.S. Airways, the plaintiff must first establish that the defendant USAirways, as opposed to his employer or the terminal owner or any other entity, owed a particular obligation or duty to him which it then left undischarged or unfulfilled. Under Massachusetts law, "before liability for negligence can be imposed there must first be a legal duty owed by the defendant to the plaintiff, and a breach of duty proximately resulting in the injury" and "the existence of a duty is typically a question of law, not fact."

In Massachusetts, absent special circumstances not shown here, one who

contracts with an independent contractor to undertake certain tasks is not subject to liability for an employee of the independent contractor who sustains injury through the use of defective equipment unless the employer owns, supplies, or actually controls the particular offending instrumentality.

The plaintiff in the instant mater [sic] has failed to identify any admissible evidence that establishes that U.S. Airways owned, provided or controlled the particular chair upon which he claims to have been injured while working for ITS. In fact, all evidence points to ITS as the owner and provider of the chair and as the sole entity responsible for the condition of the chair. Certainly nothing in the record establishes that the chair was provided to ITS by USAirways. To the contrary, the record indicates not only that ITS was responsible for providing its own office equipment, but that USAirways did *not* provide the subject chair to ITS as alleged. Moreover, plaintiff has neither suggested, nor provided any evidence to support, a claim that USAirways caused or was in any other manner responsible for the defective condition of the chair. Given that USAirways did not own, provide or control the "time place and condition" of ITS's allegedly defective office chair, no reasonable jury could conclude that USAirways owed a particular duty to repair or warn against the possible dangers of ITS' chair to an ITS employee such as the plaintiff. Consequently, USAirways is entitled to summary judgment as a matter of law.

Docket No. 15 at 7–8 (internal citations omitted).

## C. Plaintiff's Response

Plaintiff's Memorandum in Opposition responds to defendant's argument in the following way:

Summary Judgment is not appropriate in this case. There are essential and genuine issues of facts, which are in dispute.

While in the course of his employment for International Total Services located at Logan International Airport, Terminal B, Allan Ciccone was injured on March 20, 1997.

International Total Services provided Pre–Departure Screening Services for U.S. Air Inc., under the terms of the agreement, in more specifically paragraph 1.11, International Total Services was to provide wheelchair and other special assistance to U.S. Air customers, between all gates and ticket counters, baggage facilities, connecting flights, parking garage, or as otherwise specified by U.S. Air.

Before March 20, 1997, the evidence will show that every twenty (20) minutes U.S. Airs' [sic] shift managers would observe each checkpoint operation, including Terminal B where the Plaintiff was injured. The shift managers would verify their presence by signing an official logbook.

The evidence will show that there were twelve (12) "office type chairs" inside the secured area where only employee's [sic] of International Total Services, U.S. Air and ticketed passengers were allowed. The stated chairs were located approximately ten (10) feet from the checkpoint area, which is located at the entrance of the access area. Allan Ciccone will describe the access area as being approximately one hundred eighty five (185) feet in length from gate five (5) where passengers would board the aircraft and approximately forty (40) to fifty (50) feet being uphill. The twelve (12) "office type chairs" were used to accommodate U.S. Air customers.

The evidence will also show that after Allan Ciccone's accident of March 20, 1997, a sign that stated "DO NOT SIT, CHAIR BROKEN, THANKS"...was placed on the chair in which Ciccone was injured. After Ciccone's accident, the defective chair was placed in a room used exclusively by U.S. Air personnel. The question arises for the fact finder, *why would the chair be placed in a U.S. Airways room, moreover, why would U.S. Air baggage tape be used to hold down the sign on the chair if U.S. Air was not responsible.*

There is ample evidence to link U.S. Air with the defective chair, wherein, as a matter of law, Summary Judgment should be denied.

Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment, Docket No. 18, filed March 14, 2001, at 1–2 (citations omitted) (italics in original).

### D. Defendant's Burden and Plaintiffs' Response

I conclude that defendant has met its initial burden of showing that no material facts are in dispute and that defendant is entitled to judgment as a matter of law. I further conclude that plaintiffs' Opposition fails to put forward material facts that could lead a reasonable jury to believe that the chair in which plaintiff Allan Ciccone was injured was in the custody or control of defendant USAirways. I will discuss in turn each of plaintiffs' contentions to the contrary.

First. Plaintiffs assert for the first time in their Statement of Undisputed Facts that plaintiff Allan Ciccone was injured while sitting in one of "approximately twelve (12) chairs that were made available for ticketed U.S. Air passengers." Statement of Undisputed Facts, attached to Docket No. 18, at 1. I do not decide wheth-

er the allegation in Allan Ciccone's affidavit involving the twelve chairs is in contradiction to his deposition testimony and for that reason may be inadmissible. *See Morales v. A.C. Orssleff's EFTF* 246 F.3d 32, 35 (1st Cir.2001); *Colantuoni v. Alfred Calcagni & Sons,* 44 F.3d 1, 4–5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). I need not reach this question, as plaintiff's allegation concerns only which chair was involved in his injury. It does not concern whether USAirways had custody or control over that chair. Plaintiff asserts that these chairs were "made available" for ticketed USAirways passengers, but does not assert that USAirways, rather than the South Terminal Corporation, which operated Terminal B, or the Massachusetts Port Authority, made these chairs available. Even if plaintiffs mean to imply that USAirways did provide these chairs, plaintiffs have not made a proffer of admissible evidence to connect USAirways to these chairs. Therefore, plaintiffs' allegation that it was one of *twelve* chairs, rather than one of *two* chairs, in which plaintiff was injured, is not material. This fact, without any evidence that the particular chair was owned or controlled by USAirways, does not have "the capacity to sway the outcome of the litigation under the applicable law." *Cadle Co.,* 116 F.3d at 960.

Second. Plaintiffs emphasize both in their Opposition and in their Statement of Undisputed Facts that "[u]nder the terms of the agreement between International Total Services and U.S. Air, International Total Services was *only required* to provide wheelchairs and no other type of chairs." Statement of Material Facts, Attached to Docket No. 18, at ¶ 5 (italics in

original). This emphasis is misleading. The contract language that plaintiffs point to in no way indicates that International Total Services was *not* required to provide other chairs, as the paragraph cited by plaintiffs refers to the providing of assistance, including wheelchair assistance, to USAirways customers, and does not refer to the provision of equipment generally. Although defendant points to other provisions of the contract requiring that ITS supply "uniforms and other necessary equipment" and that ITS "acquire office space within the airport grounds," the overall contract between ITS and USAirways simply does not shed light on the ownership of the chair in which plaintiff was injured. The information provided by the contract does not raise a genuine issue of fact that must be resolved by a jury.

Third. Plaintiffs also stress that the chair in which plaintiff was injured was placed in a room "used exclusively by U.S. Air personnel" after the incident, and that a sign indicating that the chair was broken was attached to that chair with USAirways baggage tape. Plaintiffs argue that "[t]he question arises for the fact finder, *why would the chair be placed in a U.S. Airways room, moreover, why would U.S. Air baggage tape be used to hold down the sign on the chair if U.S. Air was not responsible.*" Docket No. 18 at 2 (emphasis in original). I first note that once again plaintiffs have failed to proffer admissible evidence asserting that the room in question was exclusively used by U.S. Airways. Defendant argues that the assertion that this room was an exclusive USAirways room is not supported by plaintiff Allan Ciccone's affidavit or by his sworn deposition testimony. *See* USAirways' Memorandum in Reply to Plaintiff's Opposition to its Motion for Summary Judgment and USAirways' Withdrawal of Its Request for Hearing, Docket No. 19, filed April 2, 2001, at 3–4. In any event, the mere fact that

this chair was placed in a room used by USAirways personnel and that USAirways tape was used to attach a sign to the broken chair does not raise any question for a jury as to USAirways' control over the chair in question. The inferences that plaintiffs invite this court to draw from these asserted facts (which are unsupported by the evidence in this case) would not lead a jury to a supportable finding that USAirways owned, controlled, or provided the chair in which plaintiff Allan Ciccone was injured. "Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." *Dow v. United Broth., of Carpenters and Joiners of America,* 1 F.3d 56, 58 (1st Cir.1993).

■ I conclude that defendant has proffered sufficient evidence that defendant did not own or have custody or control over the chair at issue, and that plaintiffs have not proffered sufficient evidence to support a finding by a jury to the contrary. In short, plaintiffs have not met their burden of demonstrating that "*every essential element* of [their] claim or defense is at least trialworthy." *Price v. General Motors Corp.,* 931 F.2d 162, 164 (1st Cir.1991) (emphasis in original). This case is ripe for decision on defendant's motion for summary judgment as a matter of law, and I conclude that defendant's motion should be allowed.

■ It is a fundamental principle of the law of negligence that liability will not lie in the absence of a legal duty owed by the defendant to the plaintiff. *See, e.g., Mounsey v. Ellard,* 363 Mass. 693, 695, 297 N.E.2d 43 (1973). As a matter of law, USAirways can prevail on its motion for summary judgment if it can demonstrate that it owed no legal duty to plaintiffs. The parties' submissions demonstrate that, beyond genuine dispute, USAirways was

not plaintiff Allan Ciccone's employer. USAirways had contracted with plaintiff's employer to provide a service that was unrelated to the use of any chairs. USAirways did not own the premises upon which plaintiff was injured, and cannot be liable under any common law theory relating to the liability of landowners. In these circumstances, USAirways can be determined to have a legal duty to plaintiff only if USAirways owned, supplied, or controlled the chair at issue. Defendant has satisfied its burden of demonstrating to the court that no evidence exists that would lead to a supportable finding that USAirways owned, supplied, or controlled this chair. USAirways is entitled to summary judgment as a matter of law.

## ORDER

For the foregoing reasons, it is OR-DERED:

(1) Defendant USAirways, Inc.'s Motion for Summary Judgment (Docket No. 14, filed February 23, 2001) is ALLOWED.

(2) The Clerk is directed to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Opinion of May 25, 2001 it is

ORDERED:

Judgment for Defendant USAirways, Inc., with costs.

### Final Judgment

For the reasons stated in the Opinion of May 25, 2001, it is ORDERED:

Judgment for Defendant USAirways, Inc., with costs.